IN RE:

BRIAN A. BANKS
AND SHANNON M. BANKS,          Case No. 25-20315-dob
      Debtors.                 Chapter 13 Proceeding
                               Hon. Daniel S. Opperman

_____/

OPINION REGARDING DEBTORS' AMENDED OBJECTION TO
PROOF OF CLAIM NUMBER 3 FILED  BY PENNY DERENOBE

Introduction

Debtors, Brian and Shannon Banks, object to the proof of claim filed by Penny Derenobe and ask that this Court reduce the amount of that proof of claim from $61,933.32 to $28,034.46. Ms. Derenobe responded to the Debtors' objection and argues that the amount stated in her proof of claim is accurate and is based upon a judgment entered in her favor and against Mr. Banks by the Yuba County Circuit Court for the State of California. Ms. Derenobe admits that a credit of $5,000 should be made to the amount stated in the proof of claim, thereby reducing the amount to $56,933.32, but denies that any further reduction should be made to that amount. Mr. Banks and Ms. Derenobe have filed substantial pleadings with this Court, and the Court has heard oral argument regarding the Debtors' objection to Ms. Derenobe's proof of claim. For the reasons stated in this Opinion, the Court concludes that the objection of the Debtors to Ms. Derenobe's proof of claim should be partially sustained, but overruled in part.

Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against

1

the estate). The Court therefore finds and concludes that it has jurisdiction over this matter, as all issues before the Court emanate from Title 11 of the United States Code.

Facts

Mr. Banks and Ms. Derenobe were married in 1992, and on July 24, 2014, purchased property located at 6564 Elizabeth Street, Gagetown, Michigan. They lived at the Elizabeth Street address for a few years, but then Ms. Derenobe separated and moved to California. Mr. Banks remained at the Elizabeth Street address. After living in California for a while, Ms. Derenobe filed a divorce action, and, after negotiations, Mr. Banks and Ms. Derenobe, both individually and through counsel, entered into a stipulation and corresponding order which stated in pertinent part.

The parties hereby stipulate and agree as follows:

Based on the real property appraisal and in exchange for Petitioner's community interest in the real property located at 6564 Elizabeth Street, Gagetwon [sic], Michigan, "Respondent shall pay to Petitioner the sum of $39,000 as and for an equalization payment, by November 1, 2021.

The property located at 6564 is hereby awarded to the Respondent as his sole and separate property. Petitioner understands and agrees that she will sign a quit claim deed signing this property over to Respondent so he may complete the refinance the property [sic] and use those funds to pay Petitioner the $39,000 payment and the additional amount below.

Respondent shall also pay the amount of $7200 representing Watt's Credits related to said property also by November 1, 2021 from the refinance.

Ms. Derenobe signed a quit claim deed in anticipation of Mr. Banks paying the $46,200 owed to her per the judgment. Instead, Mr. Banks, who married Ms. Banks, entered into a mortgage with Independent Bank in exchange for $49,000. Neither Mr. Banks or Ms. Banks paid Ms. Derenobe any money per the California judgment. Through a series of deeds, the Elizabeth Street property is now owned by Mr. and Ms. Banks.

2

Mr. Banks felt that the October 21, 2021, California judgment was improper and petitioned that Court to have it set aside for fraud. Despite his efforts, the California Court refused to modify or amend the October 21, 2021 judgment. Since Ms. Derenobe did not receive the payment as contemplated by the California judgment, she filed the necessary papers in the state of Michigan to domesticate that judgment and then instituted collection action against Mr. Banks. Mr. and Ms. Banks filed their Chapter 13 petition with this Court on March 18, 2025, and their plan was confirmed on May 23, 2025. Ms. Derenobe filed her proof of claim in the amount of $61,933.32, which includes interest up to the date of Mr. and Ms. Banks' Chapter 13 petition.

Debtors' amended objection raises a number of issues, primarily that they claim that the California judgment was based upon a voided agreement and should not have been entered. They also argue that Mr. Banks made significant payments of property taxes, marital debts, and other expenses, as well as home insurance from July 2017 to November 2021 and replacement of the central heat and air unit in April 2020. The table detailing the payments made by Mr. Banks was included in the amended objection and is duplicated as follows:

| | |
|---|---|
| Watts credits of $7,200 | $46,200.00 |
| Marital Debts Brian Banks paid with separate funds | $14,815.05 |
| Property Taxes 2017-2021 Brian Banks paid with separate funds | $12,581.90 |
| Home Insurance 2017-2021 Brian Banks paid with separate funds | $ 4,590.00 |
| Heat and air replacement 2020 Brian Banks paid with separate funds | $ 9,590.00 |
| Total paid by Brian Banks with separate funds | $41,576.95 |
| Divide by 2 | $20,788.48 |
| $46,200.00-$20,788.48 = | $25,411.52 |
| Debt with 10% simple Interest | $33,034.46 |
| Independent Bank Settlement | $ 5,000.00 |
| Remaining balance left | $28,034.46 |

Mr. and Ms. Banks also allege that they were victims of identity theft, and they believe Ms. Derenobe and her current husband were the perpetrators of that theft. Presently, it appears this theft is still under investigation and no criminal or civil charges have been pressed.

In response, Ms. Derenobe denies the allegations made by Mr. and Ms. Banks, with the exception of acknowledging that she did receive a settlement of $5,000 from Independent Bank, and that amount should be credited to the amount owed to her by Mr. Banks. She also denies any connection with any identity theft that may have occurred and points out that Mr. Banks sought to set aside the California judgment on February 23, 2022, September 26, 2022, and December 13, 2024, but that the Yuba County Circuit Court denied each one of his requests.

<u>Analysis</u>

In analyzing these issues, the Court is guided by well-founded principles regarding proofs of claim and the effect of judgments. First, Rule 3001(f) states that a proof of claim executed and filed in accordance with these rules shall constitute prima facia evidence of the validity and the amount of the claim. The claim must still set forth facts necessary to support the claim and must be in the proper form and must attach writings that support the claim. The objecting party to the claim has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity. The objection must have probative force equal to the contents of the claim. *In re Unimet Corp.*, 74 B.R. 156 (Bankr. N.D. Ohio 1987). The objecting party's burden is by a preponderance of the evidence. *Cal. State Bd. Of Equalization v. Official Unsecured Creditors' Comm. (In re Fid. Holding Co., Ltd.)*, 837 F.2d 696 (5th Cir. 1988). More than a mere unsubstantiated objection to form is required. *Garner v. Shier (In re Garner)*, 246 B.R. 617, 623 (B.A.P. 9th Cir. 2000). If the objecting party produces evidence to refute at least one of the

4

allegations essential to the legal sufficiency of the claim, the burden of persuasion shifts back to the claimant. *In re Hughes*, 313 B.R. 205 (Bankr. E.D. Mich. 2004).

As for the effect of the Yuma County Circuit Court judgment, the concepts of res judicata and claim preclusion apply.

"As a general matter, the doctrine of res judicata forecloses relitigation of matters that were determined, or should have been raised, in a prior suit in which a court entered a final judgment on the merits." *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1143 (6th Cir. 1985) (citing *Migra v. Warren City School District*, 465 U.S. 75 (1984)). Claim preclusion has been defined as "the relitigation of a claim under a different theory." *Dubuc v. Green Oak Township*, 312 F.3d 736, 745 (6th Cir. 2002). Michigan courts have "adopted a broad application of res judicata that bars claims arising out of the same transaction that plaintiff could have brought but did not." *Eyde v. Charter Township of Meridian*, 324 N.W.2d 775, 777 (Mich. Ct. App. 1982) (*quoted in Dubuc*, 312 F.3d at 747). In Michigan, claim preclusion has the following elements: (1) the first action must have resulted in a decision on the merits; (2) the issues must have been resolved in the first action, either because they were actually litigated or because they might have been raised in the first action through reasonable diligence of the parties; and (3) both actions must be between the same parties, or their privies. *Dubuc*, 312 F.3d at 747 (citing *Sloan v. City of Madison Heights*, 389 N.W.3d 418, 422 (Mich. 1986)).

Applying these general rules to the instant case, Ms. Derenobe's claim has the documents that created the claim in the form of copies of the Yuma County Circuit Court judgment and evidence that that judgment was domesticated in Michigan. She also includes a calculation as to how she arrived at the $61,933.32 amount. The difference between the proof of claim amount and

the judgment amount is due to the incurring of interest that appears calculated properly under California law. On its face, therefore, Ms. Derenobe's claim is entitled to prima facie validity.

Mr. Banks objects vehemently and argues that he paid numerous marital and other maintenance debts that were not accounted for in the Yuma County Circuit Court judgment. He argues that these amounts should have been properly accounted for and that he paid approximately $40,000 in joint marital debts that should have been credited to him.

Ms. Derenobe's initial response to Mr. Banks's objection is that the Yuma County Circuit Court judgment took into account all amounts owed to and from each spouse, and the judgment summarized the amount owed to Ms. Derenobe by Mr. Banks at the $46,200 amount. As Ms. Derenobe argues, any expenses that might have been incurred in 2017 through the date of judgment should have been or were taken into account and that the judgment is the final word on the amount owed to her by Mr. Banks.

The *Dubuc* Court answers the questions raised by the parties in favor of Ms. Derenobe. First, there was an actual decision on the merits that the parties agreed to that was reduced to a judgment. While Mr. Banks argues that he never authorized the entry of the judgment, his electronic signature and the signature of his attorney appear in the stipulated judgment. Second, the Yuma County Circuit Court action addressed the issues of marital debt and determined at the end of the day that Ms. Derenobe was entitled to $46,200. Finally, the parties in this action, namely Ms. Derenobe and Mr. Banks, are the identical parties that were in the Yuma County Circuit Court action. Accordingly, the California judgment is binding upon Mr. Banks.

The Court carefully studied the amended objections of Mr. Banks and notes that while many of the debts he stated that he paid may have been paid by him, but he was the only person living at the Elizabeth Street address during this time, so it would be typical to have the person

6

living in a house pay for the expenses of keeping the house. In this factual situation, it is appropriate that Mr. Banks paid for all the expenses incurred by operating and maintaining the Elizabeth Street residence.

Ms. Derenobe concedes that the $5,000 she received from Independent Bank for a separate action should be credited to the amount owed by Mr. Banks to her. Accordingly, the Court partially sustains the objection of Mr. Banks and reduces the proof of claim to $56,933.32.

Finally, the allegations made by Mr. and Ms. Banks that they are the victims of identity theft by actions of Ms. Derenobe may or may not be true. At this juncture, however, there is no evidence before the Court that would warrant a reduction in the amount owed to Ms. Derenobe in the proof of claim, but the Court notes that if there is a subsequent determination in favor of Mr. and Ms. Banks and against Ms. Derenobe, they would be entitled to a credit against any amount that may remain owing. For these reasons, the Court partially sustains the objection of Mr. and Ms. Banks and reduces the amount of the proof of claim of Ms. Derenobe to $56,933.32.

The Court further conditionally overrules the objection of Mr. and Ms. Banks regarding any damages connected to their identity theft for an adjustment in the event that there is any corresponding criminal or civil determination. The Court overrules the remaining objections to the proof of claim of Ms. Derenobe.

**Not for Publication**

**Signed on June 9, 2026**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**